UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| RHONDA S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:24-cv-00229-RLY-CSW |
| ) | |
| FRANK BISIGNANO, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

  Plaintiff Rhonda S. suffers from lumbar spine degenerative disc disease and spondylosis, thoracic spine degenerative disc disease and spondylosis, fibromyalgia, chronic obstructive pulmonary disease ("COPD"), panic disorder, generalized anxiety disorder, osteoarthritis in the feet, neuropathy, and chronic pain disorder. She applied for Social Security Benefits in May 2022. The Social Security Administration ("SSA") denied her claims initially and upon reconsideration. After a hearing, the Administrative Law Judge ("ALJ") held that Rhonda is not disabled. Rhonda then filed this suit for review of the ALJ's decision under 42 U.S.C. § 405(g).

---

[1] To protect the privacy of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The court referred the matter to the Magistrate Judge under 28 U.S.C. § 636(b). The Magistrate Judge recommended that the court affirm the ALJ's decision. For the reasons set forth below, the court **OVERRULES** Rhonda's objection and **ADOPTS** the Magistrate Judge's Report and Recommendation.

**I.     Background**

    **A.     ALJ review**

Rhonda filed an application for a period of disability and disability insurance benefits. She also filed an application for supplemental security income, alleging disability. Rhonda alleged disability beginning on April 1, 2022, in both applications. The SSA denied her claims initially and upon reconsideration. Rhonda then requested a hearing before an ALJ. The ALJ found that Rhonda was not disabled.

In concluding that Rhonda was not disabled, the ALJ followed the five-step sequential evaluation described in 20 C.F.R. § 416.920(a). At step one, the ALJ concluded that Rhonda had not engaged in substantial gainful activity since the alleged onset of her disability. (Dkt. 6-2 at 20). At step two, the ALJ concluded that Rhonda had the severe impairments of lumbar spine degenerative disc disease and spondylosis, thoracic spine degenerative disc disease and spondylosis, fibromyalgia, COPD, panic disorder, generalized anxiety disorder, osteoarthritis in the feet, neuropathy, and chronic pain disorder. (*Id.* at 21).

At step three, the ALJ concluded that Rhonda did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 21–24).

After step three, but before step four, the ALJ assessed Rhonda's residual functional capacity (RFC) and her past relevant work. (*Id.* at 24). In making these findings, the ALJ considered record evidence and the opinions of medical experts. (*Id.* at 24–32). Relevant here is the record evidence regarding Rhonda's COPD.

The record showed that Rhonda underwent two pulmonary function tests.[2] The first test, performed on June 14, 2022, showed the best FEV1 rate was 1.88, and the doctor said the number represented a moderate obstruction of the airways.[3] (Dkt. 6-7 at 377). The doctor also noted that Rhonda had an "[e]xcellent response to [the] bronchodilator." (*Id.*). The second test on October 3, 2022, showed a best pre-bronchodilator of 0.85 and best post-bronchodilator of 0.86. (*Id.* at 133). The technician interpreted the October pulmonary function test as showing a "[v]ery [s]evere [o]bstruction" without significant improvement post-bronchodilator. (*Id.*). The October test also revealed a difficulty in replicating results. The ALJ said, "for example, only 1 of 4 tests were reproducible pre-bronchodilator, with FEV1 results ranging from .55 in her first trial to .85 in her third trial." (Dkt. 6-2 at 28). The ALJ also considered a December 2022 "arterial blood gas study" and doctor's notes from visits in 2022 and 2023 where Rhonda's breathing was considered normal and her COPD was considered stable. (*Id.*).

---

[2] A pulmonary function test measures the claimant's lung function before receiving medication. The claimant breathes into a device before taking medication, then breathes into the device again after taking medication. The results are compared to determine how much the medication improves the claimant's breathing. 20 C.F.R. Part 404, Subpart P, app. 1 § 3.00(D)–(E) (2025).

[3] The FEV1 rate represents how much air can be pushed from the lungs quickly. Lower numbers indicate obstruction in the claimant's lungs or airways. *Id.*

3

After considering all the medical evidence, the ALJ determined Rhonda's RFC. He found that Rhonda could perform light work, with extensive limitations. The most relevant here is that the ALJ said Rhonda could "stand/walk for about 4 out of 8 hours." (*Id.* at 24). Then at step four, the ALJ asked a vocational expert about Rhonda's ability to work given her age, education, work experience, and medical limitations. (*Id.* at 32). The vocational expert answered that Rhonda would not be able to perform her past work. (*Id.* at 32).

Finally, at step five, the ALJ found that, in considering her RFC, age, education, and work experience, there were other jobs Rhonda could perform. (*Id.* at 33). Thus, the ALJ found that Rhonda was not disabled. (*Id.* at 34).

**B.     Magistrate Judge's Report and Recommendation**

After receiving an unfavorable decision from the ALJ, Rhonda filed a Complaint for Review of the ALJ's decision. (Dkt. 1). Rhonda argued that the ALJ failed to consider evidence contrary to his decision on her COPD that warranted reducing her RFC to sedentary work. Namely, he failed to properly address her pulmonary function testing and X-rays that showed pulmonary nodules in her lungs. The court referred the matter to the Magistrate Judge, who issued her Report and Recommendation. The Magistrate Judge concluded that the ALJ's decision was supported by substantial evidence and therefore recommended that the court affirm the determination that Rhonda is not disabled. This matter now comes before the court on Rhonda's Objections to the Magistrate Judge's Report and Recommendation. (Dkt. 17).

All other facts relevant to the disposition of this objection are addressed in the discussion section.

**II.     Legal Standard**

The court reviews the Magistrate Judge's Report and Recommendation de novo. Fed. R. Civ. P. 72(b)(3). The court "may accept, reject, or modify the recommended disposition." *Id.*

The court reviews the ALJ's decision to ensure that it "applies the correct legal standard and is supported by substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Under the substantial evidence standard, the court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). In making this determination, the court must consider the entire administrative record but not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

**III.    Discussion**

Rhonda objects to the Magistrate Judge's finding that the ALJ supported his decision on her COPD with substantial evidence. She reiterates her argument that the ALJ failed to properly address her pulmonary function testing and the X-rays that showed pulmonary nodules in her lungs. Rhonda acknowledges that ALJs are subject to a

5

minimal articulation requirement, but she contends that the ALJ failed to articulate enough reasoning to form the logical bridge between the evidence and her conclusion. The Commissioner argues that the ALJ more than adequately explained his determination.

"The claimant bears the burden of submitting medical evidence establishing [his] impairments and [his] residual functional capacity." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). But "[e]stablishing the existence of an impairment is not enough. The claimant must present evidence of limitations affecting their capacity to work." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). In considering the evidence, the "ALJ need not . . . discuss every piece of evidence in the record," but he cannot "ignore[e] an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)).

After reviewing the ALJ's decision, the court is satisfied that the ALJ adequately explained the connection between the evidence and his determination. The ALJ did not ignore an entire line of evidence that supports a finding of disability as Rhonda argues.

First, although Rhonda argues that the ALJ failed to adequately explain why he discounted the October 3, 2022, pulmonary function test, he provided a more than adequate explanation. Rhonda's contention is that the ALJ improperly found the test unreliable by only pointing out that the pre-bronchodilator tests were not reproducible and failing to acknowledge that "two out of the three [post-bronchodilator] tests were reproducible." (Dkt. 17 at 2). But this is not the only reason why the ALJ found the test unreliable. He also pointed out how the test results were inconsistent with her pulmonary

6

function test from July, where she showed excellent response to the bronchodilator, and from the doctors' notes from two appointments in 2023 stating that she had normal breathing and stable COPD. So even if the ALJ improperly discounted the pulmonary test based on his first point, the second reason to discount the test was sufficient. The ALJ provided an adequate explanation to form the logical bridge between the evidence and his conclusion.

Second, Rhonda is correct that the ALJ did not cite her X-rays showing pulmonary nodules in her lungs. But he cited her pulmonary function test that conflicted with his decision. He noted that the results of her October 3, 2022, test produced numbers that showed severe obstruction but then explained that they were inconsistent with Rhonda's previous pulmonary function test from July and the doctor's notes from appointments she had in 2023. (Dkt. 6-2 at 28). Thus, the ALJ considered the line of evidence contrary to his conclusion. Sure, he could have cited the X-rays and said he found the other evidence more convincing, but he did not need to. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021).

Moreover, as the Magistrate Judge pointed out, Rhonda did not produce any evidence indicating that the presence of the nodules in her lungs worsened her COPD or contributed to shortness of breath. The document Rhonda cites states that the nodules have been "stable" for more than two years and that there were "no new suspicious pulmonary nodules." (Dkt. 6-7 at 381–82). Thus, it is illogical to fault the ALJ for not explaining away a theory that Rhonda did not offer.

7

**IV.     Conclusion**

There is not a gap in the ALJ's reasoning, and his decision was supported by substantial evidence.  Accordingly, the court **OVERRULES** Rhonda's objection, (Dkt. 17), and **ADOPTS** the **Report and Recommendation** issued by the Magistrate Judge. (Dkt. 16).


**IT IS SO ORDERED** this 3rd day of December 2025.

                                             RICHARD L. YOUNG, JUDGE
                                             United States District Court
                                             Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.